# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| **CAROL L. HAKEY,** ) | Case No. 5:09cv00022 | |
| ) | | |
| *Plaintiff* ) | REPORT AND | |
| v. ) | RECOMMENDATION | |
| ) | | |
| **MICHAEL J. ASTRUE**, ) | By: | Hon. James G. Welsh |
| Commissioner of Social Security, ) | | U. S. Magistrate Judge |
| ) | | |
| *Defendant* ) | | |

The plaintiff, Carol L. Hakey, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claims for a period of disability insurance benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI respectively of the Social Security Act, as amended ("the Act") 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq*. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on August 17, 2009 along with a certified copy of the administrative record ("R.") purportedly containing the complete evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered two days later, this case came before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On review it was determined that the administrative record was incomplete to the degree that the court could not exercise an informed

judicial review (docket # 14), and the case was remanded to the agency for further consideration (docket #15). On the basis of the Commissioner's subsequent motion (docket # 16), the case was restored to the court's active docket (docket # 18), and a complete and accurate administrative transcript was filed (docket # 17).

At the time of the Commissioner's final decision the plaintiff was forty-eight years of age;[1] her education included two years of college and training as a massage therapist, and her fifteen-year vocational history included work primarily as a massage therapist and some employment as a waitress. (R.10,12,25-26,55,111,124,138-139,142.) In her appeal the plaintiff contends the administrative law judge ("ALJ") erred by concluding that her bipolar condition was not a *severe* impairment within the meaning of the Act. In response, the Commissioner argues that the plaintiff's "continu[ing] work activities as a massage therapist, her few functional limitations, her significant non-work-related activities, and her limited treatment" constitute substantial evidence basis for the ALJ's contested finding. Each party has moved for summary judgment; no written request was made for oral argument,[2] and the case is now before the undersigned for a report and recommended disposition.

I.     **Summary Recommendation**

---

[1] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

[2] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

2

A thorough review of the administrative record, and for the reasons herein set forth, demonstrates that there is substantial evidence in the record to support the ALJ's *non-severe* finding. It is, therefore, recommended that the plaintiff's motion for reversal and remand of the final administrative decision be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying the plaintiff's DIB and SSI applications.

## II. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or to SSI on or before August 7, 2008, the date of the Commissioner's final decision. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). Nevertheless, the court "must not abdicate [ its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a

whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

### III. Administrative History

The record shows that the plaintiff protectively filed her application on May 12, 2006, alleging a disability beginning January 1, 2004. (R.10,111-116,124,137-147.) Her claim was denied both initially and on reconsideration, and an administrative hearing was subsequently held on June 5, 2008. (R.10,63-75,78-90,104-105.) At this hearing the plaintiff was present, testified, and was represented by counsel. (R.10,19-62,76-77.) Vocational testimony was provided by Earl Glosser, Ph.D. (R.10,53-61,103.)

Utilizing the agency's standard sequential evaluation process, [3] the plaintiff's claim was denied by written administrative decision dated September 30, 2008 (R.10-18.) Therein, the ALJ

---

[3] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpt. P, Appx. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § .404.1503a and § 416.903a; *Hall v. Harris*, 658 F.2$^d$ 260 (4th Cir. 1981).

concluded at the second decisional step that the plaintiff's bipolar disorder was not a *severe* [4] impairment which would significantly limit her ability to perform basic work activities. (R.13-18.) A timely request for Appeals Council review was thereafter made; the request was subsequently denied, and the decision of the ALJ now stands as the Commissioner's final decision. (R.1-7.) *See* 20 C.F.R. § 404.981 and § 416-1481.

**IV.   Facts**

In her applications and related submissions, the plaintiff contends that she has been unable to work since January 1, 2004 due to a "[b]ipolar disorder with depression and mania." (R.106-118, 137-176.) This condition, she stated, causes her to suffer from disabling "indecision, exhaustion, headaches, anxiety, delusions and depression." (R.138; *see also* R.159-166.) On careful review neither her medical records nor her activities support this contention.

**A.   Medical Records**

The plaintiff's medical records show that she sought medical care from her primary care provider on six or seven occasions between July 12, 2004 and May 10, 2007 for treatment of various non-acute physical problems, (R.316-323,325-332.) None required more than symptomatic treatment; none suggests any significant physical malady relevant to her disability applications, and

---

[4] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

5

only a May 2007 entry mentions the fact that the plaintiff either is or has been experiencing mental health issues.[5] (R.320.)

Pertinent to her mental health history, two of the plaintiff's CSB records are dated earlier than her alleged January 1, 2004 disability onset date. The earliest of these is a mental health intake history dated October 30, 1992. (R.218-221.) It notes the plaintiff's recent move to Harrisonburg, her previous receipt of mental health care for a bipolar condition in Ohio, her then-current complaint of feeling depressed, her medications, and her being scheduled to see the staff psychiatrist in November. (R.218-221.) There is, however, no records of her follow-up mental health care for nearly nine years when she saw a CSB social worker on June 26, 2001 and requested "therapy to assist in dealing with [a] recent marital separation and marital disruption." (R.221,217.)

After a lapse of more than four additional years, her CSB treatment records begin with one dated August 24, 2005, some twenty-one months after she alleges her disability began. (*See* R.216.) During the time relevant to her claims, the plaintiff's CSB treatment notes (variously dated between August 2005 and April 2008), show only medication management as a treatment regime.[6] (R.210-216,269-272,297-315, 335-339.) They show she attended some counseling, but it was to assist her with her marital problems.[7] (R.51,228-232,234.) They show no psychological testing. (R.267.)

---

[5] This single entry in the office records of her primary care physician notes only that the plaintiff has a bipolar condition which was being followed through the Community Services Board ("CSB") in Harrisonburg, VA.

[6] Primarily Depakote and Wellbutrin. (*E.g.,* R. 50,210,214,264,270,297,303,335,338.)

[7] During the period relevant to her claims, the plaintiff also sough marital counseling through available community counseling ministries (R.214,227-239.)

6

They contain no suggestion that her condition required any hospitalization or intense therapy. *See Falcone v. Astrue*, 2009 U.S.Dist. LEXIS 90436, *7, 13 (NDWVa, 2009). Similarly, they contain no suggestion that she ever exhibited the mood symptoms, namely *real low* lows and *high* highs, indicative of a functionally significant bipolar condition. *See Botten v. Astrue*, 2009 U.S.Dist. LEXIS 122940, *21 (EDVa, 2009); *see also* R.266).

By way of contrast, a mental status form completed by a CSB psychiatrist (Inez White, M.D.) in January 2007 reports that the plaintiff neither isolated or secluded herself, demonstrated no abnormal behavior, attitude, confusion or cognitive deficits, reported no delusions or hallucinations, demonstrated an "adequate" attention span, judgment and fund of information, and reported only one abnormal mood event. (R.264-268.)

Consistent with Dr. White's assessment, Michael Jordan, M.D.,[8] reported on February 27, 2008 that the plaintiff's condition was "stable," and she was engaged in her "regular activities." (R.337.) Even more recently, on April 15, 2008 Michelle Wood, a CSB nurse, noted the plaintiff's "mental status exam [to be] within normal limits." (R.335.)

A consultive psychological examination by Nadia Webb, Psy.D., in September 2006 similarly disclosed no acute mental health problem. (R.240-244.) At that time the plaintiff reported her bipolar symptoms to be well-controlled [9] and that she was having no current mood, anxiety,

---

[8] Dr. Jordan is a CSB psychiatrist.

[9] "If symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

7

psychotic or other thought disturbances. (R.243.) She reported that she was experiencing some problems with cognitive thinking, but her primary problem, she told Dr. Webb, was fatigue. [10] (R.243.) Based on the results of her testing and clinical interview, Dr. Webb concluded that the plaintiff's ability to follow both simple and complex instructions without difficulty or reminders was unimpaired, that her memory was fully intact, that she was fully oriented, and that her cognitive functioning was "grossly intact." (R.243.)

### B. Work Activity

As the ALJ noted in his decision, both before and throughout the period relevant to her claims, the plaintiff worked on an ongoing, albeit part-time, basis as a massage therapist, most recently in a business jointly owned by her and her husband. (R.12; *also see* R.34-49,119-123,130-136,139,167-173,201, 209.) As she outlined primarily in her application-related submissions, this work entailed the use of technical knowledge and training, an ability to stand for an extended period, and the ability to perform miscellaneous office and work preparation activities. (R.28,30,167-168.)

### C. Daily Activities

Also relevant to her claim of a *severe* mental impairment is the scope of her daily and routine activities. As the record shows, she feeds her dogs and "sometimes" walks them. (R.149.) She reads and uses the computer "daily." (R.153.) She does "all" of the routine household chores, including cooking, cleaning, laundry, shopping, and "some" weeding. (R.151,162,265,269.) She pays the

---

[10] As Dr. Webb noted in her examination report, *fatigue* is a "physical malady and outside of [her] purview."

household bills and handles the family savings account. (R.153,162.) She exercises ("works-out") regularly, and she engages in regular social activities. (R.163,265.)

**V.     Analysis**

In her appeal, the plaintiff's basic argument is that the evidence documents her *severe* mental impairment and that the ALJ erroneously discounted this evidence and her attendant "significant [functional] limitations" by giving this evidence *minimal* decisional weight. As support for this contention, she relies on the state agency reviewers' conclusion that she had *moderate* limitations in the domain of social functioning and in the domain of concentration, persistence and pace. (R.261-263, 291-295.) Likewise, she relies on the multiple work-related mental and coping limitations reported by a CSB staff nurse (R.341-343), the significant level of disability suggested by the consultive examiner's functional assessment of 45 on the GAF scale [11] (R.243), and the inconsistency between the ALJ's *non-severe* conclusion and the plaintiff's own statements about her inability to work more than on a part-time basis (*e.g.,*R.29-30,37-38).

**A.**

In each instance the evidence cited by the plaintiff, is essentially inviting the court to re-weigh evidence that was considered and weighed by the ALJ. "Ultimately, it is the duty of the

---

[11] The Global Assessment of functioning ("GAF") is a numeric scale which ranges from zero to 100 and is used by mental health clinicians and doctors to represent a judgment of an adult individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association 1994). A specific GAF score represents a clinician's judgment of an individual's overall level of functioning, and a GAF of 41-40 indicates that the individual has serious symptoms or a serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job, etc.). DSM-IV at 32.

[ALJ] . . . and not the responsibility of the courts to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (citation omitted). Both as outlined in the preceding section and as specifically referenced by the ALJ in his decision, the plaintiff's ongoing work activity as a massage therapist, the absence of any medical record suggesting that she could not perform this work at a substantial gainful activity level, her CSB treatment records, , her lack of any ongoing mental health counseling, as well as the "limited . . . and conservative nature" of her treatment, all "contradict" directly and unequivocally the evidence cited by the plaintiff to support her claim of error on appeal. (R.13-18.)

In short, the ALJ in this case considered factors relevant to the evaluation of opinion. *See* 20 C.F.R. § 404.1527 and § 416.927. He relied on relevant decisional factors in deciding to give *minimal* weight to the medical opinions concerning the plaintiff's level of functioning. *See* e.g., Social Security Regulation ("SSR") 96-2p. And the stated reasons for his decision to accord these opinions decreased weight was sufficiently specific to permit subsequent reviewers to understand the weight he accorded them. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3$^d$ 438, 439-440 (4th Cir. 1997.) Accordingly, the ALJ's decision to give *minimal* decisional weight to the functional ability opinions upon which the plaintiff seeks to rely is more than adequately supported by substantial evidence in the record.

**B.**

Without question, at step two of the agency's sequential evaluation process, the ALJ is obligated to consider the severity of the plaintiff's mental impairment. To satisfy this step, however, it is the plaintiff's obligation to prove that she has a "severe medically determinable physical or

mental impairment" that lasted or is expected to last for a continuous period of twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) and § 416.920(a)(40(i); *see also* 20 C.F.R. § 404.1509 and § 416.909. For her to demonstrate that her impairment is *severe*, it is her burden to demonstrate it significantly limits her physical or mental ability to do basic work activities such as the use of judgment, the ability to respond appropriately to usual work situations, and the ability to deal appropriately with changes in a routine work setting. 20 C.F.R. § 404.1521(a-b) and § 416.921(a-b) . In contrast, the plaintiff's mental impairment in this case is *not severe*, if the evidence, as weighed and evaluated by the ALJ, only minimally limits her "ability to function independently, appropriately, and effectively in an age-appropriate manner." SSR 96-3p.

In the instant case, as the ALJ fairly concluded that the plaintiff's medical records, her range of activities and the level of her continuing work simply do not support either the testimony or the various opinions upon which she relies. As the ALJ observed, the record contains no objective evidence that the plaintiff's mental impairment significantly limits her ability to perform basic work activities at a substantial gainful employment level. (R.16.) It is simply a *non-severe* condition.

## C.

The recommendation in this case to affirm the Commissioner's final decision should not be read to suggest that the plaintiff suffers from no mental impairment. The objective medical record certainly documents her condition. The record, however, also amply supports ALJ's conclusions that this condition is *non-severe* within the meaning of the Act and that it would not be reasonably expected to result in a totally disabling condition.

## VI. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence;

2. The Commissioner's final decision gave the requisite consideration to the opinions of the health care professionals concerning the plaintiff's level of functioning, including those of the state agency reviewers, Dr. Webb and Nurse Wood, and the decision to give *minimal* weight to these opinions is supported by substantial evidence;

3. The finding that the plaintiff's mental impairment is not a decisionally severe condition is supported by substantial evidence;

4. Substantial evidence in the record supports the finding that through the date of the ALJ's decision the plaintiff was not disabled within the meaning of the Act;

5. The plaintiff has not met her burden of proving either a *severe* or disabling condition since her alleged disability onset date of January 1, 2004; and

6. The final decision of the Commissioner should be affirmed.

## VII. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision fo the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VIII.  Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof.  **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 27th day of March 2010.

                                                 /s/  *James G. Welsh*
                                                 United States Magistrate Judge